UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

|   |   |   |
|---|---|---|
| **CLIFF LIQUOR INC,** | : | |
| Plaintiff, | : | Case No. |
| v. | : | |
| **UNITED STATES OF AMERICA** | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff Cliff Liquor Inc, by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, hereby files this Complaint against Defendant United States of America and alleges:

1. This action seeks judicial review of the Final Agency Decision ("FAD"), dated September 23, 2025, issued by the U.S. Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS"), which imposed a six-month term disqualification on Cliff Liquor Inc's retail food store, Liberty, thereby precluding its participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

## PARTIES

2. Plaintiff Cliff Liquor Inc is a Michigan corporation.

3. Plaintiff Cliff Liquor Inc is a resident and citizen of the State of Michigan.

4. Plaintiff Cliff Liquor Inc is the owner of Liberty, a retail food store located at 240 Cliff Street, Battle Creek, Michigan 49014 ("Liberty").

5. Liberty is a "Retail Food Store" as defined in 7 C.F.R. § 271.2.

6. Defendant United States of America is the federal government.

7. USDA is an executive branch department of the federal government.

8. FNS is an agency of the USDA.

9. FNS generally administers and has promulgated regulations governing the SNAP pursuant to a delegation by Congress in Section 4 of the Food and Nutrition Act of 2008, 7 U.S.C. § 2013, and from the USDA Secretary.

10. Formerly known as the Food Stamp Program, SNAP provides supplemental nutrition benefits to nearly 42 million Americans and approximately 1.5 million residents of Michigan. SNAP aims to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

11. Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNS asserts that it has regulatory authority to authorize and disqualify retail food stores from participating in SNAP.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, 28 U.S.C. §§ 1331 and 1346.

13. Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because Liberty, the retail food store that is the subject of this action, is located in this judicial district and because the United States of America is deemed a resident of this district and has consented to suit in this district.

14. Liberty has exhausted all applicable administrative remedies required prior to the institution of this action.

## FACTUAL ALLEGATIONS

15. Liberty is a convenience store that serves an impoverished community in Battle Creek, Michigan.

16. At all times relevant hereto, Liberty is and has been authorized by FNS to participate in SNAP as an authorized retailer.

17. At all times relevant hereto, Liberty has trained its employees regarding SNAP in accordance with FNS requirements.

18. At all times relevant hereto, Liberty properly supervised its employees regarding SNAP transactions and program requirements.

19. At all times relevant hereto, Liberty sold SNAP-eligible staple food items.

20. At all times relevant hereto, Liberty also sold SNAP ineligible items.

21. A majority of items sold at Liberty are and were SNAP-eligible items.

22. The Food and Nutrition Act does not define "common nonfood items."

23. FNS's SNAP regulations do not define "common nonfood items."

24. FNS has not issued any publicly issued guidance defining "common ineligible items."

25. Plastic cutlery, dish soap, sponges, wax paper, freezer bags, and sandwich bags are not "common ineligible items" under FNS's regulations or otherwise.

26. No other SNAP-authorized retail food store in the vicinity carries as wide an array of SNAP-eligible items at comparable prices.

27. At all times relevant hereto, Liberty is and has been authorized by FNS to redeem SNAP benefits. Liberty's FNS-issued SNAP authorization number is #0825488.

28. On or about July 8, 2025, FNS's Retailer Operations Division ("ROD") sent Liberty a letter charging the Store with accepting SNAP benefits in exchange for common ineligible

items, in alleged violation of FNS's SNAP regulations contained at 7 C.F.R. § 278.2(a) ("Charge Letter").

29. The Charge Letter alleged that Liberty sold plastic cutlery, dish soap, sponges, wax paper, freezer bags, and sandwich bags on three occasions in mid-March 2025.

30. On August 17, 2025, Liberty submitted its response to the Charge Letter.

31. On August 22, 2025, FNS issued its initial determination ("Initial Determination"). In the Initial Determination, FNS concluded that the alleged violations set forth in the attachments to the Charge Letter occurred, declined to issue a warning or assess a Hardship CMP, and disqualified the Store from participating in SNAP for six months.

32. The Initial Determination, which consisted of a short form letter, advised that FNS found that "the violations occurred at your store."

33. On August 26, 2025, Liberty timely sought administrative review of the Initial Determination pursuant to 7 C.F.R. Part 279.

34. On September 19, 2025, Liberty submitted its response in support of its Request for Administrative Review of the Initial Determination ("Liberty's Response").

35. Liberty's Response requested that FNS's Administrative and Judicial Review Branch ("ARB") reverse the Initial Determination and either issue it a warning or assess a Hardship CMP.

36. On September 23, 2025, FNS Administrative Review Officer ("ARO") Rich Proulx issued the FAD. A copy of the FAD is attached hereto as Exhibit A.

37. In its FAD, FNS rejected all of Liberty's arguments, notwithstanding the evidence submitted by the Store, and affirmed the Initial Determination that imposed a six-month term disqualification from SNAP upon Liberty.

38. The FAD failed to address Liberty's argument that plastic cutlery, dish soap, sponges, wax paper, freezer bags, and sandwich bags are not "common ineligible items."

39. The FAD rejected Liberty's argument that the management of the Store was not careless and did not poorly supervise its employees, concluding in a boilerplate statement that "[t]he investigation report shows that of the four times that nonfood violations were attempted, store personnel permitted them three times . . . Therefore, a six-month disqualification for the violations committed, the minimum, is the appropriate sanction in this case." FAD at 4.

40. ARO Proulx did not conduct any independent analysis of the allegations set forth in the Charge Letter and merely relied upon the undercover investigator's report.

41. The FAD failed to meaningfully address Liberty's argument that a warning was appropriate.

42. The FAD rejected Liberty's argument that a CMP was appropriate, noting only that the Retailer Operations Division allegedly determined that there were twelve other SNAP-authorized stores within a one-mile radius of Liberty. *Id.* at 5.

43. The FAD improperly relied upon the Retailer Operations Division's determination, and ARO Proulx did not conduct her own independent analysis.

44. Despite ARO Proulx's conclusions, FNS's SNAP Retailer Locator indicates that there is only one other SNAP-authorized retailer within ½ mile of the Store.

## FNS's SNAP REGULATIONS

45. Pursuant to 7 C.F.R. § 278.6(e)(5), the penalty for a firm not previously sanctioned for accepting SNAP benefits in exchange for "common nonfood items due to carelessness or poor supervision" (emphasis added) is a six-month term disqualification from participation in SNAP.

46. FNS is required to "send the firm a warning letter if violations are too limited to warrant

a disqualification." 7 C.F.R. § 278.6(e)(7).

47. Pursuant to FNS's regulation governing Hardship CMPs, 7 C.F.R. § 278.6(f)(1), FNS is required to impose a CMP as a sanction in lieu of disqualification when doing so would "cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

## COUNT I - JUDICIAL REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R. § 279

48. Plaintiff repeats and re-alleges paragraphs 1 through 47 as if fully set forth herein.

49. Liberty denies that it engaged in violations of FNS's SNAP regulations or that a six-month disqualification from SNAP was an appropriate penalty.

50. Liberty did not sell any "common ineligible items" in exchange for SNAP benefits.

51. At no time did Liberty poorly supervise its employees.

52. No evidence in the Administrative Record supports FNS's determination that Liberty poorly supervised its employees.

53. At no time did Liberty act carelessly in permitting the sale of "common ineligible items" in exchange for SNAP benefits.

54. No evidence in the Administrative Record exists that supports FNS's determination that Liberty acted carelessly in permitting the sale of "common ineligible items" in exchange for SNAP benefits.

55. FNS's determination that Liberty sold "common ineligible items" in exchange for SNAP benefits was invalid, unreasonable, arbitrary, capricious, and unsupported by the evidence.

56. FNS's determination that Liberty poorly supervised its employees was invalid, unreasonable, arbitrary, capricious, and unsupported by the evidence.

57. FNS's determination that Liberty acted carelessly in permitting "common ineligible

items" to be sold in exchange for SNAP benefits was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

58.  FNS's six-month disqualification of Liberty's participation in SNAP and denial of its request for a Hardship CMP was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence. *See Kim v. United States*, 903 F. Supp. 118 (D.D.C. 1995) (reversing FNS's imposition of a six-month term disqualification where there was no evidence of intent, no evidence that a pattern of selling ineligible items due to carelessness existed, no prior warnings were given, and no trafficking took place).

59.  FNS's six-month disqualification of Liberty from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to consider all evidence related to the Store.

60.  FNS failed to properly investigate and consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

61.  FNS's six-month disqualification of Liberty from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to properly consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

62.  FNS's use of a one-mile radius of Liberty for determining whether other stores in the vicinity sold as many staples at comparable prices was arbitrary and capricious.

63.  FNS's analysis of other SNAP-authorized stores in the vicinity failed to consider where SNAP beneficiaries who shopped at Liberty resided.

64.  FNS officials and employees did not visit other SNAP-authorized stores in the vicinity in

7

March 2025.

65.  FNS did not conduct a comparison of prices of staple food items at Liberty and other SNAP-authorized stores in the vicinity in March 2025.

66.  FNS's six-month disqualification of Liberty from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS's analysis of other SNAP-authorized stores in the vicinity (1) failed to consider where SNAP beneficiaries who shopped at Liberty resided; and (2) was not based, upon information and belief, on store visits to other SNAP-authorized retailers in the vicinity in March 2025.

67.  FNS's six-month disqualification of Liberty from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS's analysis was not based on a comparison of (a) prices charged for staple food items or (b) the variety of staple food items at Liberty and the other SNAP-authorized stores within ½ mile of the Store in March 2025.

68.  FNS's six-month term disqualification of Liberty from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to interview any SNAP beneficiaries whose EBT cards were used at the store in March 2025.

69.  FNS's six-month term disqualification of Liberty from participating in SNAP was improper because it was not based on evidence that Liberty poorly supervised its employees.

70.  FNS's six-month term disqualification of Liberty from participating in SNAP was improper because FNS had no evidence that Liberty acted carelessly in permitting the exchange of ineligible items for SNAP benefits.

71.  FNS's denial of Liberty's request for a Hardship CMP was not rationally related to any legitimate governmental interest.

72.  FNS's denial of Liberty's request for a Hardship CMP is inconsistent with Congressional

intent in enacting the Food and Nutrition Act of 2008.

73. FNS's failure to issue a warning to Liberty based on the sale of ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

74. FNS's imposition of a six-month term disqualification based on the sale of SNAP-ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

75. FNS's denial of Liberty's request for a Hardship CMP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

76. 7 C.F.R. § 278.6(e)(5), is inconsistent with the directive from Congress contained in 7 U.S.C. § 2021(a)(2) in violation of the Food & Nutrition Act of 2008 and the Administrative Procedure Act.

77. To the extent that 7 C.F.R. § 278.6(e)(5) purports to provide criteria for the disqualification of a SNAP-authorized retailer food store based on the sale of SNAP-ineligible items, those criteria are inconsistent with the directive from Congress contained in 7 U.S.C. § 2021(a)(1) in violation of the Food & Nutrition Act of 2008 and the Administrative Procedure Act.

78. FNS's denial of Liberty's request for a Hardship CMP, which was based entirely upon circumstantial evidence, represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

79. District courts must exercise independent judgment in deciding whether an agency has acted within its statutory authority. *Loper Bright v. Raimondo*, 369 U.S. 369 (2024).

80. District courts should no longer grant deference to agency actions.

81. District courts should set aside agency actions that are unsupported by substantial evidence.

82. FNS's decision to deny the Plaintiff's request for a Hardship Civil Money Penalty exceeded its authority under the Food & Nutrition Act of 2008.

83. FNS's decision to deny the Plaintiff's request for a Hardship Civil Money Penalty exceeded its authority under its SNAP regulations.

84. FNS's decision to deny the Plaintiff's request for a Hardship Civil Money Penalty was not supported by substantial evidence.

85. At no time did FNS provide Liberty with a warning that ineligible items, including (but not limited to) plastic cutlery, dish soap, sponges, wax paper, freezer bags, and sandwich bags, were being sold in exchange for SNAP benefits prior to issuance of the Charge Letter.

86. FNS should have provided Liberty with a warning that ineligible items, including (but not limited to) plastic cutlery, dish soap, sponges, wax paper, freezer bags, and sandwich bags, are not eligible for the redemption of SNAP benefits prior to the issuance of the Charge Letter.

87. FNS should have provided Liberty with a warning that ineligible items, including (but not limited to) plastic cutlery, dish soap, sponges, wax paper, freezer bags, and sandwich bags, were being sold at the Store in exchange for SNAP benefits after the first alleged violation.

88. In the event that FNS had provided Liberty with a warning that ineligible items, including (but not limited to) plastic cutlery, dish soap, sponges, wax paper, freezer bags, and sandwich bags, were being sold at the Store in exchange for SNAP benefits after the first alleged violation, no further violations would have occurred.

89. In the event that FNS provided Liberty with a warning that ineligible items, specifically

plastic cutlery, dish soap, sponges, wax paper, freezer bags, and sandwich bags, were being sold at the Store in exchange for SNAP benefits after the first alleged violation, Liberty would have re-trained its employees regarding SNAP requirements.

90. FNS had no basis to have concluded that plastic cutlery, dish soap, sponges, wax paper, freezer bags, and sandwich bags are "common ineligible items."

91. A SNAP retailer charged with the exchange of common ineligible items is eligible for imposition of a Hardship CMP in lieu of disqualification in the event that there are no other SNAP-authorized retail food stores in the vicinity selling as large a variety of staple food products at comparable prices.

92. Prior to issuing the Initial Determination, FNS failed to conduct any analysis of the variety of staple food products carried at Liberty or any other SNAP-authorized retailer in the vicinity in March 2025.

93. Upon information and belief, prior to issuing the Initial Determination, FNS failed to conduct any analysis of the pricing of staple food products carried at Liberty.

94. Upon information and belief, prior to issuing the Initial Determination, FNS failed to conduct any analysis of the pricing of staple food products carried at other SNAP-authorized retailers in the vicinity.

95. No other SNAP-authorized retailer in the vicinity sells as wide a variety of SNAP-eligible items at comparable prices as Liberty.

96. FNS's decision to deny Liberty's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contains no analysis regarding the prices charged for comparable staple food items by other SNAP-authorized retailers in the vicinity.

97. FNS's decision to deny Liberty's request for a Hardship CMP is legally deficient and

erroneous, including because the FAD contained no analysis regarding the varieties of staple food items carried by other SNAP-authorized retailers in the vicinity.

98. FNS's decision to deny Liberty's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no analysis regarding the prices of comparable staple food items carried by other SNAP-authorized retailers in the vicinity.

99. Whether staple food items at comparable prices are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

100. Whether as wide a variety of staple food items are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

101. 7 C.F.R. § 278.6(f)(1) provides, in pertinent part, that "FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices." (emphasis added).

102. FNS, in issuing the FAD, relied upon records and other information never provided to Liberty.

103. In its FAD, FNS relied upon data concerning other SNAP-authorized stores not "in the vicinity" of the Store.

104. Based on the FAD, FNS currently uses a one-mile radius to determine whether other SNAP retailers are "in the vicinity" in determining whether to assess a Hardship CMP.

105. FNS calculates distance "as the crow flies," not walking or driving distance, when

determining whether there are other stores "in the vicinity" in the context of deciding whether to assess a Hardship CMP.

106. Until recently, FNS's used a ½ mile radius in urban areas for determining whether other SNAP retailers are "in the vicinity" for hardship CMP purposes is arbitrary and capricious.

107. FNS's use of a one-mile radius for determining whether other SNAP retailers are "in the vicinity" for Hardship CMP purposes ignores that many SNAP beneficiaries do not have cars and do not (and cannot) walk up to two miles (round trip) to shop at a SNAP-authorized retailer.

108. No SNAP beneficiary, especially those who are elderly or disabled, can be reasonably expected to walk as much as one mile (each way) to shop at the unidentified stores referenced in the FAD.

109. No factual support exists for FNS's decision to deny Liberty's request for a Hardship CMP.

110. FNS relied upon undisclosed analyses, including analyses of other SNAP-authorized retail food stores, which were never provided to Liberty.

111. The FAD was not based upon any declarations or affidavits from a USDA or FNS employee or contractor whose identity was disclosed to Liberty.

112. The FAD is FNS's final administrative determination that its six-month disqualification of Liberty from participation as an authorized SNAP retailer was properly imposed.

113. The FAD is subject to judicial review and a trial *de novo* on all issues pursuant to 7 U.S.C. §§ 2023(a)(13), (15).

114. Judicial review proceedings pursuant to 7 U.S.C. §§ 2023(a) are not governed by the Administrative Procedure Act, and the evidence is not limited to the administrative record prepared by FNS.

115. The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

116. The FAD was based on SNAP regulations promulgated by FNS in excess of authority granted to it (and USDA) by Congress.

117. FNS incorrectly determined that Liberty was not eligible for a Hardship CMP, in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

118. FNS's denial of Liberty's request for a Hardship CMP was premised upon an erroneous, unsupportable, arbitrary, and capricious interpretation of 7 C.F.R. § 278.6.

119. In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to Liberty.

120. Plaintiff respectfully requests a *de novo* review of FNS's FAD, which affirmed the term disqualification of Liberty from SNAP and determined that the alleged violations took place.

121. Plaintiff respectfully requests a *de novo* review of FNS's FAD in which FNS affirmed the decision in the Initial Determination to decline to issue a warning.

122. Plaintiff respectfully requests a *de novo* review of FNS's FAD, which affirmed the decision in the Initial Determination to decline to assess a Hardship CMP.

WHEREFORE, Plaintiff Cliff Liquor Inc respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States and issue an Order granting the following relief:

(a)  Reversing the FAD;
(b)  Vacating FNS's Initial Determination;
(c)  Declaring the FNS's policy or practice of failing to obtaining data to determine whether other SNAP-authorized stores in the area sell as large a variety of staple food items at comparable prices is arbitrary and capricious, is inconsistent with the Administrative Procedure Act and the Food & Nutrition Act of 2008, and exceeds the authority delegated by Congress therein;

(d)   Declaring that FNS's use of a one-mile radius from a retail food store when making a Hardship CMP determination is arbitrary and capricious;

(e)   Preliminarily enjoining FNS from disqualifying Liberty from participating in SNAP during the pendency of this action;

(f)   Permanently enjoining FNS from denying Liberty's authorization to participate in SNAP based upon the Initial Determination and the FAD;

(g)   In the alternative, directing FNS to impose a Hardship Civil Monetary Penalty in an amount consistent with FNS's regulations;

(h)   Awarding Cliff Liquor Inc an amount equal to its reasonable attorneys' fees and costs, including pursuant to the Equal Access to Justice Act; and

(i)   Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 8th day of October 2025.

By:   */s/ Stewart D. Fried*
Stewart D. Fried, Esq.
Olsson Frank Weeda Terman Matz PC
2000 Pennsylvania Avenue, N.W., Suite 4003
Washington, DC 20006
Telephone: 202.518.6326
Facsimile: 202.234.3550
sfried@ofwlaw.com

*Attorneys for Plaintiff Cliff Liquor Inc*